First case on the call this morning is agenda number six, case number 105-437, People v. Terrence Walker. Counsel may proceed. Good morning, Your Honors. My name is Robert Stevenson, and I represent Terrence Walker. Embossed in gold on the wall behind me in this courtroom appears the Latin phrase, audi alterum partum. Its English translation is hear the other side. This court's supervisory order, reinstating my client's appellate rights 14 years after his conviction, ensured that a court would, for the first time, hear the other side. The trial court did not hear the other side, because the trial court forced my client to trial at age 16 on two counts of first-degree murder, facing a natural life sentence with counsel that was admittedly unprepared to represent him. An admittedly unprepared counsel is incapable of voicing the other side. The trial judge found counsel's lack of preparedness, quote, irrelevant. The trial that followed consumed only 42 pages of transcript. The state's brief in this case is five pages longer than my client's transcript from his double murder trial. As evidenced by the state's motion in opposition to the supervisory order and the multiple pages in its brief that it spends criticizing that order, it doesn't want a court to hear the other side, and the reason is simple. Whether this court analyzes this case under the first issue raised in Terrence Walker's brief that the trial judge abused his discretion in failing to order a continuance, or the second issue raised in Terrence Walker's brief that he received ineffective assistance of counsel, the result is the same. This court should reverse my client's convictions and remand the case for a new trial. With respect to the first issue, there is no mechanical test for determining when a trial judge abuses his discretion. However, both statutory and case law list several factors that are relevant to the exercise of sound discretion when a court is confronted with a request for a continuance. The trial judge in this case explicitly refused to consider at least one of those relevant factors and ignored the others. And instead reflexively denied the request for a continuance on the sole basis that the case had been set for trial. On the day of trial, defense counsel entered the courtroom and informed the trial judge that she was not originally appointed to represent Terrence Walker, that she had miscalendered the trial date and thought it was six days in advance, and that she had spent the previous two evenings on trials and other matters until past 7 p.m. the night before. This is a factor that's relevant to the exercise of sound discretion. The trial judge said it was irrelevant. It was a dirty shame and there wasn't a private lawyer in the business that hadn't tried to pull something like this. Additionally, statutory and case law tell us that the trial judge should look to the complexity of the case, the seriousness of the charges, and the diligence on the part of the defendant when confronted with a request for a continuance, the complexity of the case. The State's answer to discovery listed 42 witnesses, at least two of whom were experts in fingerprint and medical examiner. Counsel, may I ask a couple of questions? Absolutely, Your Honor. Does the record reveal how long of a continuance was sought? No, Your Honor. In fact, I think that's the critical point. The trial judge never even asked, and that's why I think the record supports the conclusion that it was reflexive on his part to deny it. Likewise, does the record reflect what counsel would have done during that continuance appearance that would have changed her ability to defend this case? No, Your Honor. The record is completely void of that information. However, it is clear from the record that she thought the case was set for the 26th. And we don't, by any means, are suggesting that it was, in fact, the trial date. It's clear it was set for the day that it went. But counsel said she miscalendored that trial date. But if that's indicative of any way of how much time she needed, it was one week, isn't it? It was less than a week, Your Honor. That's right. And I think that's critical because it shows that the judge didn't even inquire on this basis. He reflexively denied this motion, and that's why I think we get this abuse of discretion. Is it fair to inquire what additionally could have been done to improve the defense of this case in that period of time? I think it's dangerous, Your Honor, and I think it's dangerous for a couple of reasons. To do so, we're left with the record that we have. And that record was created by counsel that was unprepared. So I don't think we can go back and look at this and say, well, given this record, here's what should have been done, because counsel wasn't even prepared enough to know what she should have done. How long had this counsel represented this defendant? Your Honor, the record is unclear. Does the record show? It's somewhat unclear, Your Honor, but it was at least two months. She filed a motion to suppress statements, which raised two issues sometime in November. She appeared on December 16th, agreed to the trial date of January 20th. On January 20th, in fact, we know the reason she even knew it was set for trial was because my client called her and left a message. My 16-year-old client called his appointed attorney the day before trial and left her a message. That's how she found out that she had miscalendered it. So when we talk about diligence on the part of the defendant, that certainly shows diligence. On top of that, my client never asked for a change of counsel, never asked for a change of judge, never delayed the proceedings in any manner. There's no indication that he failed to cooperate with his counsel. So when we look at diligence on the part of the defendant, which is a factor that both statutory and case law say are relevant to the exercise of this discretion, clearly that weighs in favor of granting my client the continuance. Your brief noted that there had been 14 continuances in this case already granted prior to this? I'm sorry, Your Honor, I don't recall if that's what the brief says. Yes, that's correct. The continuances were all by agreement, and it had never before been set for trial. This case was set for a jury trial when counsel asked for or said she had miscalculated. Is that correct? She had indicated bench trial, Your Honor. I thought that waiver of jury came in after she had indicated she was unprepared. It did, in fact, and I agree with you, and I think it shows some of actually her ineffectiveness, which goes to the second issue. But at the time in December, she indicated that it would likely be a bench trial. At the time that they appeared in court on January 20th, there was no indication. Certainly a jury had not been waived at that time. And I think it's interesting that counsel, having appeared in court unprepared to represent a client on very serious charges, two counts of first-degree murder, she's unprepared. She has this exchange with the judge, which I think reasonable inference is there was some hostility there. The judge informed her it's a dirty shame. There isn't a private attorney in the business that hasn't tried to pull something like this. This counsel has lost some degree of credibility with the trial judge at this point. So what is the first action she takes at this point? She has her client waive a jury trial to turn it over to this judge. So having admitted that she's unprepared to give him his Sixth Amendment right to counsel, the first thing she does is have my client waive another constitutional right. And I think that was doesn't appear to have been a spur-of-the-moment decision, in that she indicated to the court on an earlier date that she would waive a jury trial. She indicated bench, but at another date certainly. She's not bound to that decision, obviously. My client hadn't waived jury trial at that time. And given the situation that she is now forced to go to trial unprepared, two counts of first-degree murder, possible natural life sentence, I think it's unreasonable to sit back at that moment and then waive another constitutional right, the right to a jury trial. This judge had hostility towards her client's position. It was very clear, at least towards her, I'll rephrase, at least towards her position. So I think to turn the case over to him at that point raises some serious questions of judgment. I've talked about the seriousness of the charges. They're beyond dispute. Was there any indication in the record that when the waiver of the jury trial was tendered that she renewed her request for a continuance since it was going to be a bench trial, perhaps more easily rescheduled? No, Your Honor. And I don't think that the fact that it was going to be a bench trial or a jury trial in any way entered the court's mind, and I think that for at least a couple of reasons. One, she had indicated bench beforehand. Two, the judge did not decide to deny this continuance on the basis of docket management or inconvenience to the parties. There was at least none of that from him. And he said why he denied it. He denied it because the case had been set. Of course, the case, the State argues, I believe, that an out-of-State witness had been subpoenaed for that date. That was not mentioned by the trial judge. Well, no, Your Honor, and I'd like to talk about that point. The State's argument stems from one comment on December 16th where the State's attorney said, I can't try this case until January because I have an out-of-State witness. The State's answer for discovery lists 42 witnesses. Forty-one of them have in-State addresses. The one remaining witness is address unknown. His name is Gerard Lindsey. He's a civilian. At no time when counsel requested a continuance did the State object on the basis that they had an out-of-State witness. At no time did the trial judge say I can't grant a continuance because we've flown in, the State has an out-of-State witness. And no out-of-State witness testified at trial. There were four witnesses. Three Chicago police officers. There were still current Chicago police officers at the time they testified. And an assistant State's attorney. There was still an assistant State's attorney at the time of trial. So even when we get to a point, which I think is a valid consideration when confronted with a request for continuance, whether or not there's going to be an inconvenience to the parties, that, too, weighs in favor of granting the continuance in this case. Does the trial court abuse its discretion in denying a motion to continue in a serious case any time counsel says they're not prepared? No, Your Honor. I don't. How do we differentiate that? Well, I think there's two factors that we have to look at. The first is, what did the judge do? Can we see from the record the discretion that the judge employed? And in this case, we can. And I think that any decision this Court renders can be limited to these mercifully unique facts. And in this case, the judge immediately denied it. He didn't ask any questions. It wasn't, counsel, how long do you need? Counsel, why weren't you prepared? He could have asked, whose courtroom were you in last night? This could have been verified. He could have asked questions. He didn't. He said, I'm sorry, Ms. Rouse. This case has been set. It's going to trial. What the counsel was telling him is a dirty shame. It's irrelevant to him. So I think we know that the Court didn't exercise discretion in this case. Plus, when we review the factors, and I've gone through them, that statutory and case law tell us are relevant to the exercise of sound discretion, all of them weigh in favor of granting a continuance in this case. So that's the first part of the answer. The second part is, what happens from this abuse of discretion? And I think this Court should look at it and say, as the case of Tyler says, which is cited in my brief, did the counsel appear skillful and diligent in representing her client at trial? This Court can use hindsight to see what happened. And what happened was a 42-page double murder trial, 19 questions on cross-examination. The State, on page 16 of its brief, actually concedes the defense counsel did not act with diligence. And we agree with that. She acted with neither skill nor diligence. And let's go through what she did and didn't do at trial to find out the effect of this. The first thing she did, I've discussed. She has her client waive a jury trial. Given the situation that she's in, that strikes us as fundamentally unreasonable. The second thing she did was waive an opening statement, indicating that she had no theory of the case. The State calls its first witness, and she asks zero questions. The State calls its second witness, and that is an Officer Davey, who was the evidence technician that arrived on the scene. And she asked Davey two questions. I'm sorry, three questions. Did you pull prints from inside and outside of the car? Yes. Did you pull prints from the left and the right? Yes. And did you pull 16 prints in total? Yes. End of cross-examination. The State calls its third witness, and this is latent fingerprint examiner Brewer. And I think this is actually critical to this case. The State called James Brewer for one reason and one reason only, so that he could testify that one of the 16 prints found on the automobile in which two deceased individuals were discovered matched my client. That is the most damning piece of evidence he had. That is why the State called him. Defense counsel stood up and asked him two questions and elicited that same response. She stood up and had him repeat the most damaging evidence against her client. Had the State tried to have James Brewer repeat that information, competent defense counsel would object on the basis of asked and answered. Your Honors, in the most absurd of situations, defense counsel has bolstered the State's case by having this information repeated to the finder effect. Now, the appellate court said that this actually calls into question my client's guilt. They don't explain how eliciting information from a State's witness that her client's fingerprint is on a car calls into question his guilt. The State has not taken up that argument, and I personally do not understand it. After James Brewer's testimony, Assistant State's Attorney Bernard testifies. At the time, she was a felony review Assistant State's Attorney. She interviewed my client, Terrence Walker. Now, defense counsel had previously filed a motion to suppress statements on the basis that it was involuntary and that there wasn't a youth officer present during his interrogation. The questions she asked Brewer may on their face, I'm sorry, Bernard, may on their face appear to be relevant to that motion to suppress. But when we look at it, there are fundamental flaws in it. And the first is this. Her questions towards Assistant State's Attorney Bernard pertain to whether or not a youth officer was present at the time that the arresting officers interrogated my client. Sounds good, except for the fact that Assistant State's Attorney Bernard was not there at the time that the arresting officers interrogated my client, and that was her answer. I don't know if a youth officer was present. I wasn't present. After Bernard's testimony, there's a couple of stipulations. The state rests in defense counsel's interest of stipulation. That stipulation is essentially a mirror image of Terrence Walker's statement. The statement she's trying to get suppressed, which is if the two arresting officers, Shack and Fleming, were called to testify, they would say that Terrence Walker informed them that he was afraid of the two individuals, that they threatened him, they accused him of stealing his cocaine. Counsel, was that evidence the basis of reducing one of the murders to a second degree? Well, it's an interesting question, Your Honor, and I think it's important. Yes and no. The trial judge, when he found second degree, and again, I think this is critical, he said why he found second degree. He said not looking past the four corners of this statement, and the statement was Terrence Walker's statement. It was not based on defense counsel's argument, which I argue was actually a legally deficient theory of self-defense, which I will explain in a minute. It had nothing to do with what defense counsel did. The trial judge said it was based on the statement, the statement that the state turned in evidence. And the reason it's legally deficient, Your Honor, is because there is no mention, not even in argument, that there was an imminent threat. And without an imminent threat, there is no self-defense. So she put through this statement. It does, however, result in this case, for whatever benefit it is, is one of the two murder charges being reduced to second degree. One was reduced, yes, but I don't think there's a fair reading of the record indicates that it was this counsel's argument that made that occur. And again, because the trial judge specifically said not looking past the four corners of this document, and that was Terrence Walker's statement, which was introduced into evidence by the state, not looking past that, he found second degree. So it was the state's evidence that compelled the finding of second degree, not defense counsel's actions. Of course, she didn't, and then I'll leave it alone, she didn't know what the judge was going to base his ruling on at the time she elicited the evidence from the witness. No, Your Honor, but I think when you look at certainly the totality of it, and even in this instance in particular, there's no skill and diligence by putting forth, without even failing to, I'm sorry, with failing to argue a necessary element of self-defense. That doesn't show skill and diligence, and that's what we're looking for here. There's no skill and diligence in eliciting the most damaging piece of evidence from a state witness brewer. There's no skill and diligence in asking Assistant State's Attorney Bernard about who was present at a meeting or at an interrogation that she was not present for. There's no skill and diligence exhibited anywhere in this trial by defense counsel. And I'm going to quickly touch on my second argument, Your Honors. Obviously, we have asked this Court to presume prejudice, and I would like to hit three quick points before my time expires. First, the appellate court rejected this because they found that defense counsel called into question my client's guilt concerning James Brewer's testimony when she elicited that one of his fingerprints was on the car. I've been over that. That is not, that does not qualify as calling into question my client's guilt. Nor is it meaningful, adversarial, or testing of the state's case. The appellate court also found that my client performed meaningful adversarial testing by her questioning of Assistant State's Attorney Bernard. Again, Bernard wasn't present at the time and the circumstances the defense counsel questioned her about. That is not meaningful adversarial testing. And finally, they brought up the argument that we just went over, Your Honor, which is her argument on self-defense. And again, it was found on the state's evidence, not on defense counsel's argument. In sum, Your Honor, my client asked that he be given the right that every criminal defendant in the state of Illinois is given, a right that has been denied him for 16 years, and that is the right to have the trial court hear the other side, reverse his convictions, remand the case to the circuit court, and let the circuit court hear the other side. Thank you. Counsel, you may proceed. May it please this honorable court, my name is Sam Shem, Assistant State's Attorney from Cook County State's Attorney's Office, on behalf of the people of the state of Illinois. This court has declared that the abuse of discretion standard is the most deferential standard of review with the exception of no review at all. Defendant in this case cannot establish that the trial court abused its discretion in denying a last-minute continuous request on a date that was set for trial. Defendants' repeated claims that a juvenile defendant in this case was denied effective assistance of counsel in a fair trial are all meritless. The fact that the entire record of proceedings- Doesn't the issuance of the supervisory order to reopen this case kind of undercuts this argument? Undercuts the argument of- Of the continuance. Well, that's the issue that's brought forth before this court by the defendant, and we're responding to it. I guess I don't understand your honors. The fact that the entire record of proceedings consisted of mere 43 pages, as the defendant would have it, does not necessarily mean that the trial court abused its discretion in this case. The length of the record was largely dictated by the amount of evidence presented by the prosecution in this case. Even though it was a so-called double-murder trial, the prosecutor took only four live witnesses, whose testimonies were relatively short, and five stipulations to put their case in chief. Mr. Shim, before you leave the discretion of the trial judge, where was the exercise of discretion? And I think counsel, if you cut through what he said, it was a reflexive, arbitrary ruling designed to send a message to attorneys, wasn't it? We disagree with that argument. I think if you look at the record in its totality, and look at what happened prior to January 20th day, namely on December 16th of 1993, confidently advised the court and the prosecutor that any court date would be convenient with her, with the exception of February 14th of 1994. She advised the court that the case would be disposed of by way of a bench trial. So if you look at that in context of that, and you look at what counsel advised the court at the last minute on January 20th, and said merely, I'm not ready, because I've been on trial, and I was not the original attorney that was assigned to represent the defendant, the reasonable inference is that the trial court, in the exercise of its discretion, decided that this was, one, either a dilatory tactic, or she was not being sincere about her continuous request. He didn't believe that she was on trial all week, on a trial that ended at 7 p.m., right? Well, that might be a reasonable inference. One of many reasonable inferences that one can draw. How hard would it have been for the trial court to ask counsel what courtroom she had been in all week and then have the clerk call and confirm? Well, she advised the court that she was on trial for the last two days before Judge Karnazes. But as it was mentioned by counsel when questioned by the justices in this court, she didn't bother to explain to the court how much time she needed. She didn't really advocate her case for requesting a continuous in this case. She didn't tell her, well, I was on trial before Judge Karnazes on this case, it was this type of a case. I could bring you an affidavit from my counsel, co-counsel, if there was any, to prove that I was being sincere in representing that to you. Other than the terse statement that she was on trial and she wasn't ready, that was it. And I think it was reasonable for the trial court in this case to interpret those statements to say that she was not being sincere. Ross, I am not ready for trial, Judge, and I will not be able to go to trial today. Court, it is irrelevant. There isn't a private attorney in the business who hasn't tried to pull something like this. How much further would you have gone after the court's comment? Well, I would have showed counsel, or rather the court, my calendar and say, look, Judge, I miscalendered this case for the 26th. I would have shown him my calendar that says I was on trial in front of Judge Karnazes for the past two days. I would explain to the court, this is the amount of time that I would need to prepare, now that I've represented to you that I'm not ready for trial. And this is what I need to do in order to faithfully and competently represent my client. This is the type of evidence that I need to induce before this court to fulfill my obligations as his counsel, but none of that was done. When the trial judge said that's irrelevant, what was he talking about? We interpret that to mean that the court took counsel's statement and rejected it as being meritless, not being justifiable reason for seeking. Possibly he took his statement and just chose that it was of no significance to the case that he was trying? That seems to be a possibility to me. That is a possibility, but a more reasonable inference, according to our position, is that the court rejected it outright as being meritless. And that's sufficient enough to warrant a granting of a continuous request at that point. Mr. Shim, isn't it the court's responsibility also to make sure that the defendant has a fair trial? Absolutely. And I think if you give the trial judge in this case, who's been on the bench for a very long time, a benefit of the doubt, he certainly had that in the back of his mind when he denied this motion. I'm sure. How do you know that? The record supports our position that where counsel had at least three months to study this case. But she told him that she was not ready. Well, I think the record belies that point, because if you look at the length of time that she had the case, time to study the file and prepare for trial, look at the motion of suppress that she filed in November 19th of 1993, which was in addition to the motion of suppress that was filed by the original attorney, and you look at what happened at trial, the fact that she cross-examined the state's witnesses, made closing arguments, presented evidence on her client's behalf, which, as Your Honor has already noted, ultimately resulted in the trial finding the defendant guilty of second-degree murder on one of the charges. I think it's reasonable to conclude that the trial court in this case certainly had that issue, namely a defendant's right to a fair trial, took that into consideration in ultimately denying the request. Mr. Shimmel, let me ask a question in this way. There's nothing to suggest, at least in this record, and I know counsel would have something to say about it as the reason why there is nothing to suggest, that the defendant's confession was anything other than truthful and voluntary, right? That was his allegation, Judge. Well, I mean, we don't see anything other than a truthful and voluntary confession because it wasn't really tested, right? It was somewhat tested, let's put it that way, yes. Okay. But isn't there a point where even if this court looks at this as not an unjust outcome, as we look at the facts that are before us, isn't it also important that we ensure a fair process regardless of whether we think the outcome was correct or not? Absolutely, and I think there was a fair process according to the defendant in this case. If a 16-year-old member of your family was facing four counts of first-degree murder, would you be satisfied to learn that he or she received the same level of process that the defendant received in this case? I would be very happy that he was found guilty of second-degree murder on one of the charges. Based on the totality of the record, the overwhelming amount of evidence that was amassed against the defendant, I think aside from contrary to what counsel argues before this court, that the evidence was not overwhelming, that would, according to my view, would be a fair process, a just result. Obviously we differ on that point, but that's one of the things that this court should take into consideration. According to case law, your honors could take into consideration the strength of the evidence against the defendant that was presented by the prosecution. You have the defendant's detailed confession that detailed the execution-style slaying of the two victims as they sat unarmed in that car. That confession was corroborated by the physical evidence as well as the stipulated medical testimony. He confessed that he shot Damien Stanford four times in the back of the head, and the medical evidence supported that fact. He specifically confessed that he shot Terry Matthews once in the back of his head by his right ear and once in the right shoulder, and certainly the medical testimony supported that fact. In addition, they recovered a .22 caliber casing in the front passenger side as well as two additional fired casings from the back of that car. In addition, they recovered, as was mentioned, a fingerprint on the outside. And while we're on the subject of fingerprint, it's important to note that on the direct examination of the evidence technician who lifted all the prints, he was asked specifically by the prosecutor, how many lifts did you recover, and he could not recall. And it was only on cross-examination when counsel got up and asked, isn't it true that there were 16 total prints recovered? And his answer was, I believe that's true, if that's what the report provides. So contrary to what was stated by the defendant in his brief, it wasn't just a mere rehashing of what was elicited on direct examination. New evidence that was favorable to the defendant was elicited by counsel on cross-examination. Counsel made no effort whatsoever to explain to the judge why she had not contacted the prosecutor previously, even though she found out the night before that the case was up the next day. She candidly told the court that when the prosecutor asked her why she did not call him, she really didn't have any answer for him. Counsel, going back to your prejudice analysis, is the prejudice analysis here the same as the second prong of Strickland on the first issue? Yes, it is. It differs in name only. When you look at the overwhelming evidence of the overwhelming evidence, it's clear that even if the trial court were to have abused its discretion, he certainly cannot establish that he suffered any prejudice in this case. Tell me about that analysis, especially by the appellate court. They said that no prejudice, for example, because you can't show that the motion to suppress would have been granted, right? Well, the motion to suppress wasn't even litigated. Well, counsel complains about the type of questions that were asked by defense counsel on cross, the felony review prosecutor, but the appellate court properly found that those were relevant questions that pertained to the motion issue. She asked him, pursuant to what she alleged in the motion to suppress statements, whether or not a youth officer was present when defendant was initially interviewed by the detectives. That certainly is a relevant question, and that goes to litigating that particular issue. Granted, there wasn't a full-blown hearing on that particular issue, but... The way the motion, if I understand it, was conceived was that the motion would be tried with the trial. Is that correct? That is correct. And though counsel may have brought up the fact of the youth officer not being present, she never sought a decision on that motion from the court, did she? She did not. What is the significance of that? What are we to draw from that? Well, ultimately, while defendant would argue to this court that that is reflective of counsel's incompetence, but according to our view, at the end of the day, it really didn't matter. There was nothing... strike that. If you look at the record as a whole, whatever she alleged in the motion to suppress statement was contradicted by what was in the record. For instance, if you look at the allegation pertaining to the absence of a youth officer or parent, as we noted in our brief, that factor, according to this court's jurisprudence, is one of many factors you consider in determining the voluntariness of a juvenile's confession. But more than that, the record clearly establishes that if you look at his detailed confession that was handwritten, there was a youth officer, Misnick, who was present for the entire interview when the defendant was interviewed by the felony review assistant. And his signature and his name appears on each page of the seven-page handwritten confession. And if you look at the other allegations contained in paragraph four of the motion, namely that because of his physical or mental deficits that he was unable to understand his Miranda warnings, that claim is directly contradicted by what the defendant told the probation officer for the purposes of the PSI, because in that, he told the probation officer that he had no history of mental illnesses, he has received no inpatient or outpatient treatment for any mental issues, and that he was faithfully attending high school prior to the time of his incarceration, and then he continued to attend high school while inside the jail. And that fact was corroborated by the probation officer when she interviewed the director of the jail school, who confirmed that fact. Did she abandon the motion by not asking for a ruling? I don't think so. She realized, I think, rightfully so, based upon the amount of evidence that was presented against the defendant, that that was a non-issue at that point. That it would be futile to pursue it? Correct. And as the court noted in chronic, counsel is not required to engage in frivolous charades in representing the defendant in light of an overwhelming evidence. And that is exactly what we have in this case. Justice Garmon asked a question earlier about the standard for abuse of discretion and how this case wouldn't serve as a precedent for any time somebody asks for a continuance and it's denied that kind of abuse of discretion. What, if any, significance does the fact that the trial judge is looking at a minor who's a defendant facing four counts of first-degree murder, does that play any role at all in whether he abuses discretion based on denying a short continuance in this case? I think it does, and it probably should. But at the end of the day, if you look at all of the factors that even the defendant mentioned in this case, namely issues of docket management, the seriousness of the case, the complexity of the case, all those things come into play in the final analysis, it is more reasonable to conclude that the trial court did not abuse its discretion. And Your Honor has to keep in mind that the case had been pending on the judge's docket for over a year and a half. January 20th of 1994 was the 27th court date. So certainly if the issue of judicial management or judicial docket management has to have any meaning, then certainly it has to comprise of a judge's ability to deny a last-minute continuance request such as we had in this case. Defendant cites the Tyler, but actually if you look at the facts of Tyler, it supports our case, because their originally appointed PD resigned and went to work for the Lake County State's Attorney's Office. The new PD that was assigned to the defendant showed up on the date of trial and asked for a continuance because she needed to obtain a motion transcripts, and the court ultimately denied that continuance request. The appellate court affirmed saying that the PD's office had more than two months to order those transcripts, did not show due diligence, and affirmed the denial of the continuance. Here the trial counsel did not show due diligence. She didn't bother to explain to the court what necessitated reasonably and what merit, what necessitated her request for a continuance at the last minute. Finally, procedurally I think defendants claim in this regard it has been forfeited because there was no motion to, motion for a new trial or any post-trial motions filed in this case, and defendants belated attempt to meet his burden under the plain error rule raised for the first time in his reply brief is ineffectual. Finally, as to the chronic issue, the defendant cannot establish that one, that his counsel entirely and completely failed to subject the prosecution's case to any meaningful adversarial testing, and that the circumstances were such that it had the effect of denying him counsel completely. And it should be noted that defendant does not argue before this court that Strickland versus Washington analysis applies. He relies solely on chronic. He cannot meet his burden under that test, and therefore we would respectfully request this honorable court to affirm defendant's conviction for first and second degree murder and the sentences imposed for those convictions. Thank you. Thank you, Mr. Chen. Mr. Stephenson. Your Honors, I just have a couple of quick points. Specifically to Tyler, the point for which we cited Tyler is this. What the court said in Tyler is that when a motion for continuance is denied, an appellate court looking at hindsight can tell that counsel appeared prepared and acted with skill and diligence, they are not going to reverse the conviction. The inverse is true in this case, Your Honors. Defense counsel was not prepared. She acted with neither skill nor diligence in representing her client, and therefore it should be reversed. It is not the same standard, we argue, that you would apply in a Strickland case. And when it comes to the effect that this case has on future cases and abuse of discretion, this case, and I think rightfully so, should be limited to the, again, that are present here. This doesn't happen frequently in the state of Illinois. This is a 42-page double murder trial and a judge that flat out negated his responsibility to engage in any discretion. Secondly, the state asked this court to give Judge Morrissey the benefit of the doubt based on his long experience. We ask this court that if anyone is entitled to the benefit of the doubt, every bit of law that has ever come down in this country dictates that it should be given to the individual, my client, who sat by while counsel was unprepared and the judge forced that counsel to proceed to trial. And the state argues, well, counsel didn't go in and provide further explanation for her need for a continuance. Let's not take this out of counsel's position. Counsel is at court. She has a 16-year-old client facing two counts of first-degree murder. She's got a judge that is obviously hostile to her. The state wants her to continue to argue with this judge, who will apparently in 42 pages of transcript be deciding her client's fate, to further argue with him about the validity of her need for a continuance. It was prudent not to do it. The judge could have made a phone call if he didn't believe that she was on trial the previous night, and it is the judge that needs to exercise discretion. And it is the judge that is not simply a referee, but a judge is responsible for the justice of his judgment. And in the words of this judge, this judgment is a dirty shame. And it impugns the integrity of this court and the entire criminal justice system in the state of Illinois, and anyone associated with that system ought to be embarrassed by it. But we should also be proud, because we are here now. 16 years late, but we are here now. And this court has an opportunity to correct it. Reverse my client's convictions. Remand this case for a new trial. Thank you.